1    **WO**

2

3

4                    **IN THE UNITED STATES DISTRICT COURT**
                     **FOR THE DISTRICT OF ARIZONA**
5

6    Elijah Wesbrock,                          No. CV-19-02196-PHX-DWL

7                    Plaintiff,                **ORDER**

8    v.

9    Unknown Ledford, et al.,

10                   Defendants.

11

12          Pending before the Court is a motion to dismiss by Defendants Michael Fernandez

13   and Gabriel Vasquez (together, the "Glendale Defendants"). (Doc. 18.)  For the following

14   reasons, the motion will be granted in part and denied in part.

15                                     **BACKGROUND**

16   I.     Factual Background

17          The facts alleged in the complaint are as follows.  The Glendale Defendants are

18   police officers employed by the City of Glendale, Arizona. (Doc. 1 ¶¶ 9-10.)  Also named

19   as defendants are several other Glendale police officers and supervisors, identified as John

20   Does, as well as Sergeants Ledford and Ledesma of the United States Air Force (together,

21   the "Air Force Defendants"). (*Id.* ¶¶ 6-7, 11-12.)

22          On February 21, 2017, Plaintiff was "standing on a crosswalk of a public side walk

23   using a camera to record his surroundings" outside the Kachina Gate of Luke Air Force

24   Base in Glendale, Arizona. (*Id.* ¶¶ 15-16.)  One of the Air Force Defendants approached

25   Plaintiff and told him to put his camera away. (*Id.* ¶ 19.)  Plaintiff responded that he had

26   the right to remain silent and continued recording. (*Id.* ¶ 20.)  The Air Force Defendant

27   then ordered Plaintiff to place his hands behind his back, handcuffed him, and detained

28   him on the sidewalk. (*Id.* ¶ 21.)

Afterward, the other Air Force Defendant arrived and assisted with Plaintiff's detention. (*Id*. ¶ 23.)  The Air Force Defendants "knew that Plaintiff had not violated any law" but nevertheless persisted with his detention. (*Id*. ¶ 24.)  "Plaintiff invoked his right to remain silent when he was asked for his identification." (*Id*. ¶ 25.)

"Shortly after," Officer Vasquez happened to see Plaintiff detained on the side of the road and stopped to provide assistance. (*Id*. ¶ 29.)  One of the Air Force Defendants told Officer Vasquez that Plaintiff had "refused to comply with instructions to stop recording and . . . refused to leave the installation." (*Id*. ¶ 30.)  One of the Air Force Defendants then obtained supervisory approval to press charges against Plaintiff. (*Id*. ¶ 32.)

Officer Fernandez and other Glendale officers then arrived on the scene. (*Id*. ¶ 34.)  The Glendale Defendants kept Plaintiff handcuffed on the sidewalk for approximately an hour. (*Id*. ¶¶ 35.)  During this period, Officer Vasquez stated: "[W]e are trying to figure out [what] was going on, whether you committed a crime or not." (*Id*. ¶ 36.)  Plaintiff insisted he was "standing on the corner of a crosswalk on a public side walk and that he has a right to record the public view." (*Id*. ¶ 40.)  In response, Officer Vasquez stated: "I'm not saying it is illegal or not, I'm saying why would you want to do that." (*Id*. ¶ 41.)  The Glendale Defendants eventually called their supervisor, John Doe ("Supervisor Doe"), who ordered them to arrest Plaintiff for trespassing and refusal to provide his name. (*Id*. ¶ 44.)

Officer Fernandez arrested Plaintiff and took him to the Glendale City Jail for booking. (*Id*. ¶ 45.)  Plaintiff, who was charged with trespassing and refusing to provide his name, spent the night in jail. (*Id*. ¶ 48.)

On May 30, 2018, both charges were dismissed. (*Id*. ¶ 49.)

II.   Procedural Background

On April 3, 2019, Plaintiff filed a complaint. (Doc. 1.)

On July 9, 2019, the Court dismissed this action against all defendants without prejudice for failure to complete service. (Doc. 10.)

On November 7, 2019, the Court granted Plaintiff's motion to reinstate the case. (Doc. 16.)

1    On December 3, 2019, the Glendale Defendants filed a motion to dismiss.  (Doc.

2    18.)

3    On December 31, 2019, Plaintiff filed a response.  (Doc. 22.)

4    On January 17, 2020, the Glendale Defendants filed a reply.  (Doc. 25.)

5    **DISCUSSION**

6    Plaintiff's complaint asserts five claims under 42 U.S.C. § 1983 against one or both

7    of the Glendale Defendants: (1) retaliation for protected conduct, in violation of the First

8    Amendment (Count III—Officer Fernandez only), (2) unlawful arrest, in violation of the

9    Fourth Amendment (Count IV), (3) malicious prosecution, in violation of the Fourth

10   Amendment (Count V—Officer Fernandez only), (4) failure to intervene, in violation of

11   the First and Fourth Amendments (Count VI), and (5) conspiracy to violate civil rights

12   (Count VIII).  (Doc. 1.)  Additionally, Plaintiff names Supervisor Doe as a defendant in

13   two of those counts (Counts V and VIII) and asserts a standalone § 1983 claim against

14   Supervisor Doe for "supervisory individual liability" (Count VII).  (Doc. 1 ¶¶ 121-32.)

15   The Glendale Defendants argue that all claims against them, as well as the

16   "supervisory individual liability" claim against Supervisor Doe, should be dismissed.

17   (Doc. 18 at 2-3.)  Specifically, the Glendale Defendants argue that all claims except the

18   malicious prosecution claim in Count V are barred by the statute of limitations.  (*Id*. at 4-

19   8.)  The Glendale Defendants further argue that Count V fails to state a claim, and

20   alternatively that qualified immunity shields them from suit.  (*Id*. at 8-13.)

21   I.      Statute Of Limitations

22   "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by

23   the applicable statute of limitations only when the running of the statute is apparent on the

24   face of the complaint."  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d

25   954, 969 (9th Cir. 2010) (quotation omitted).  "[A] complaint cannot be dismissed unless

26   it appears beyond doubt that the plaintiff can prove no set of facts that would establish the

27   timeliness of the claim."  *Id*. (citation omitted).  The Court must "accept[] all factual

28   allegations in the complaint as true and draw[] all reasonable inferences in favor of the

2196-DWL

nonmoving party." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 886-87 (9th Cir. 2017) (quotation omitted).

"Section 1983 does not contain its own statute of limitations. Without a federal limitations period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). "In Arizona, the courts apply a two-year statute of limitations to § 1983 claims." *Id.* However, "federal, not state, law determines when a civil rights claim accrues." *Id.* "Under federal law, a claim accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury." *Gregg*, 870 F.3d at 885.

### A.    Claims Accruing Upon Plaintiff's Arrest

Counts III, IV, and VI all turn on the alleged illegality of Plaintiff's detention and arrest, which occurred on February 21, 2017. (Doc. 1 ¶ 15, 45.) Plaintiff knew of this injury as it happened—not only was he aware of being arrested, but the complaint indicates that he was keenly aware during the arrest sequence of the alleged infringement of his constitutional right to record the public view from public sidewalks. (*Id.* ¶ 40.) Thus, the ordinary operation of the statute of limitations would bar Counts III, IV, and VI as of February 20, 2019, two years after the arrest occurred.[1] Plaintiff did not file suit by that date—the complaint was not filed until April 3, 2019.

Plaintiff argues that *Heck v. Humphrey*, 512 U.S. 477 (1994), delays the accrual of these claims. (Doc. 22 at 4-13.) *Heck* holds that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been . . . invalidated." 512 U.S. at 486-87. *Heck*, in other words, "delays what would otherwise be the accrual date of a tort action until the

---

[1]    The Glendale Defendants note that Plaintiff's claims against them relating to his arrest may have accrued as late as February 22, 2017, the date of his arraignment. (Doc. 25 at 4-5.) Plaintiff does not provide any argument on this point, which is immaterial given that Plaintiff did not file suit until April 2019.

setting aside of an extant conviction which success in that tort action would impugn." *Wallace v. Kato*, 549 U.S. 384, 393 (2007).

Plaintiff argues that because the claims relating to his arrest are "inseparable" from his malicious prosecution claim, which did not accrue until his charges were dismissed in May 2018, "favorable adjudication of these claims prior to the dismissal of the criminal charges would have implied that the criminal charges were invalid," which implicates *Heck* and delays accrual. (Doc. 22 at 11.) The Glendale Defendants respond that *Heck* applies only when there's an existing criminal conviction that a § 1983 action would impugn. (Doc. 25 at 3.)

The Glendale Defendants have the better side of this argument. In *Wallace*, the Supreme Court acknowledged that "§ 1983 actions . . . sometimes accrue before the setting aside of—indeed, even before the existence of—the related criminal conviction" but nevertheless declined to adopt a "federal tolling rule," holding that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 394, 397. Thus, "*Heck* applies only when there is an extant conviction and is not implicated merely by the pendency of charges." *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015).

Because *Heck* did not bar Plaintiff from bringing suit, it did not delay the accrual of Counts III, IV, and VI. The statute of limitations on those counts began to run on February 21, 2017 and expired on February 21, 2019, more than a month before Plaintiff filed suit. Accordingly, Counts III, IV, and VI against the Glendale Defendants will be dismissed.[2]

…

…

…

---

[2]     Although the parties dispute whether, as a legal matter, the presence of probable cause would necessarily preclude Plaintiff from asserting a claim for retaliatory arrest (*compare* Doc. 22 at 7-9 *with* Doc. 25 at 11), there is no need to reach that issue in light of the determination that Count III is time-barred.

B.      "**Supervisory Individual Liability"**

The Glendale Defendants also seek to dismiss Count VII, Plaintiff's "supervisory individual liability" claim against Supervisor Doe, based on the statute of limitations. (Doc. 18 at 7.)

This request will be denied.  The motion to dismiss does not identify Supervisor Doe as a moving party and the record does not reflect that Supervisor Doe has been served. Additionally, Supervisor Doe is named as a defendant in several other counts, so the dismissal of Count VII would not eliminate Supervisor Doe as a defendant from the case.

C.      **Conspiracy**

The Glendale Defendants argue that because all of the events underlying Count VIII, the conspiracy claim, "indisputably occurred on February 21, 2017," Count VIII is time-barred for the same reasons as Counts III, IV, and VI.  (Doc. 18 at 7-8.)  Plaintiff responds that some of the overt acts in furtherance of the alleged conspiracy occurred after the arrest. (Doc. 22 at 13-15.)

"Conspiracy is not itself a constitutional tort under § 1983. . . .  [T]here must always be an underlying constitutional violation."  *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012).  "To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (quotation omitted).  "To be actionable, the conspiracy must result in overt acts, done in furtherance of the conspiracy, that are both the cause in fact and proximate cause of plaintiffs' injuries."  *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990).  "The Ninth Circuit determines the accrual of civil conspiracies for limitations purposes in accordance with the last overt act doctrine."  *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986).  "Under the last overt act doctrine, the injury and damage in a civil conspiracy action flows from the overt acts, not from the mere continuance of a conspiracy, and the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff."  *Dowling v. Arpaio*, 2011 WL 843942, \*7 (D. Ariz. 2011).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, it's not clear from the face of the complaint that all of the alleged overt acts occurred on February 21, 2017.  The complaint includes an allegation that the Glendale Defendants and the Air Force Defendants "[c]onspired to submit unsubstantiated and false statements to supervisory individuals to support the unlawful arrest, detention and criminal charges."  (Doc. 1 ¶ 131(c).)  To be sure, this allegation is conclusory and devoid of any dates or specifics—although Plaintiff asserts in his response that paragraph 131(c) refers to the Glendale Defendants' "communications . . . [with] the prosecutor on the case" that were intended "to support the . . . criminal charges lodged on Plaintiff" (Doc. 22 at 13-14), those details do not appear in the complaint itself.  Nevertheless, the Glendale Defendants haven't moved to dismiss Count VIII due to a lack of particularity—they've moved to dismiss it on statute-of-limitations grounds.  Drawing all reasonable inferences in Plaintiff's favor, it's possible the complaint alleges overt acts that occurred after the arrest and less than two years before the complaint was filed.  Accordingly, the Glendale Defendants' motion to dismiss Count VIII as time-barred will be denied.  *Von Saher*, 592 F.3d at 969 (a complaint may be dismissed as time-barred "only when the running of the statute is apparent on the face of the complaint").

II.     Failure To State A Claim

The Glendale Defendants move to dismiss Count V, the malicious prosecution claim, for a variety of reasons.  "[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party."  *Id.* at 1144-45 (citation omitted).  However, the court need not accept legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 679-80.  The court also may dismiss due to "a lack of a

- 7 -

1   cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015)

2   (citation omitted).

3          "Malicious prosecution, by itself, does not constitute a due process violation."

4   *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).  Thus, "[i]n order to

5   prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the

6   defendants prosecuted [him] with malice and without probable cause, and that they did so

7   for the purpose of denying [him] equal protection or another specific constitutional right.'"

8   *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citation omitted).

9   "Malicious prosecution actions are not limited to suits against prosecutors but may be

10  brought . . . against other persons who have wrongfully caused the charges to be filed."  *Id.*

11         Count V alleges that Officer Fernandez (but not Officer Vasquez, as the Glendale

12  Defendants' briefing appears to assume) wrongfully caused charges to be filed against

13  Plaintiff in "an attempt to justify the initial detention, which was carried out solely because

14  Plaintiff was filming on the public sidewalk and because he exercised his right to remain

15  silent while unlawfully detained."  (Doc. 1 ¶¶ 98-99, 105-06.)  The Glendale Defendants

16  seek dismissal of Count V on the grounds that (1) probable cause existed for the arrest, (2)

17  there are no plausible allegations of malice, and (3) in the alternative, the claim is barred

18  by qualified immunity.  (Doc. 18 at 8-13.)

19         A.    **Probable Cause**

20         "Probable cause exists when, 'under the totality of the circumstances known to the

21  arresting officers, a prudent person would have concluded that there was a fair probability'

22  that a crime was committed."  *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)

23  (citation omitted).  "Probable cause is not a high bar."  *District of Columbia v. Wesby*, 138

24  S.Ct. 577, 586 (2018) (citation and internal quotation marks omitted).  "Because probable

25  cause deals with probabilities and depends on the totality of the circumstances, it is a fluid

26  concept that is not readily, or even usefully, reduced to a neat set of legal rules.  It requires

27  only a probability or substantial chance of criminal activity, not an actual showing of such

28  activity."  *Id.* (citations and internal quotation marks omitted).

The Glendale Defendants identify two reasons why they had probable cause to arrest Plaintiff. First, they contend there was probable cause to arrest Plaintiff for committing the crime of trespassing in the third degree, in violation of A.R.S. § 13-1502(A)(1), because one of the Air Force Defendants told Officer Vasquez, who didn't arrive upon the scene until Plaintiff had already been handcuffed and detained, that Plaintiff had been trespassing on "the installation" (*i.e.,* Luke Air Force Base) and had refused to leave. (Doc. 18 at 8-12.) The Glendale Defendants contend they were entitled to rely on this statement, irrespective of whether it was actually true, pursuant to the "collective knowledge doctrine." (*Id.*) Plaintiff responds that the Glendale Defendants' reliance on the statement is misplaced because they subsequently conducted their own investigation, which raised questions about "whether Plaintiff did in fact set foot on Military Property" and "significantly diminished any 'arguable probable cause' [they] may have once had." (Doc. 22 at 7-9, 18-19.) Among other things, Plaintiff notes that, during the Glendale Defendants' investigation, he explained that he had been standing on a public sidewalk, Officer Vasquez admitted not knowing "whether you committed a crime or not," and Officer Vasquez also declined to "say[] it is illegal or not." (*Id.*, citing Doc. 1 ¶¶ 36, 40, 41.)

The Glendale Defendants' reliance on the "collective knowledge doctrine" is misplaced. As the Ninth Circuit has explained, this doctrine applies "in at least two situations." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007). The first is "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned." *Id.* In that scenario, although "no single law enforcement officer knows all of the facts necessary to establish reasonable suspicion or probable cause," courts "have been willing to aggregate the facts known to each of the officers involved at least [w]hen there has been communication among agents." *Id.* (quotation omitted). Second, the collective knowledge doctrine also applies "where an officer (or team of officers), with direct personal knowledge of *all* the facts necessary to give rise to reasonable suspicion or probable cause, directs or requests

1
2

that another officer, not previously involved in the investigation, conduct a stop, search, or arrest." *Id.* at 1033.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

The Glendale Defendants contend that "[t]his case is an example of the second situation—where an officer with direct personal knowledge of the facts supporting probable cause . . . communicates that information to a second officer . . . who acts upon it." (Doc. 18 at 10.)   The problem is that the complaint alleges that the Air Force Defendant's statement to Officer Vasquez regarding the existence of probable cause was untrue (and that the Air Force Defendant knew it was untrue). (Doc. 1 ¶¶ 24, 30-31.)   The collective knowledge doctrine doesn't apply in this scenario—probable cause doesn't somehow emerge when a law enforcement officer with knowledge of the relevant facts, who is aware of the absence of probable cause, falsely assures a fellow officer that probable cause exists and induces the fellow officer to make an arrest based on that misstatement. *Cf. United States v. Hensley*, 469 U.S. 221, 231 (1985) ("[The legality of] an arrest in reliance merely on a flyer or bulletin . . . *turns on whether the officers who issued the flyer possessed probable cause to make the arrest*.  It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance.") (emphasis added).   Although the unknowledgable arresting officer may still have an array of other defenses available to him in an ensuing §1983 action for malicious prosecution, the existence of probable cause isn't one of them.

20
21
22
23

Alternatively, the Glendale Defendants argue that because Plaintiff "acknowledges that he refused to identify himself after being detained," they had "probable cause to arrest under A.R.S. § 13-2412(A)." (Doc. 18 at 11.)   This argument also lacks merit, at least on the present record.

24
25
26
27
28

Under A.R.S. § 13-2412(A), "[i]t is unlawful for a person, after being advised that the person's refusal to answer is unlawful, to fail or refuse to state the person's true full name on request of a peace officer who has lawfully detained the person based on reasonable suspicion that the person has committed, is committing or is about to commit a crime."   Here, although the complaint acknowledges that "Plaintiff invoked his right to remain silent when he was asked for his identification" by the Air Force Defendants (Doc.

1 ¶ 25), the complaint is silent as to whether the Air Force Defendants advised him that his refusal to identify himself was unlawful. Under § 13-2412(A), such an advisement is a prerequisite to criminal liability. *Mena v. Massie*, 2019 WL 132355, *3 (D. Ariz. 2019) ("[The officer] did not warn her that failure to give her full true name would result in her arrest. He had neither a reasonable suspicion nor probable cause to believe she was violating A.R.S. § 13-2412(A)."). Additionally, the statute requires that the advisement be made by a "peace officer," and the Glendale Defendants have not briefed whether a staff sergeant employed by the United States Air Force (Doc. 1 ¶¶ 6-7) qualifies as a "peace officer" under Arizona law. *See generally* A.R.S. § 13-105(29) ("'Peace officer' means any person vested by law with a duty to maintain public order and make arrests and includes a constable."); *State v. Kaiser*, 65 P.3d 463, 467 (Ariz. Ct. App. 2003) ("[T]he Arizona legislature has defined a 'peace officer' to be 'any person vested by law with a duty to maintain public order and make arrests,' and this duty can only be accomplished through the lawful enforcement of state and local laws.") (citation omitted). Thus, although the Glendale Defendants may be able to establish, at a future stage of this case, that there was probable cause to arrest Plaintiff for violating A.R.S. § 13-2412(A), they are not entitled to dismissal of Count V on that basis at this stage.

### B.    **Malice**

The Glendale Defendants next argue that Count V must be dismissed because "there are no plausible factual allegations that [they] acted with 'malice' . . . . For instance, there are no factual allegations that [they] knew Plaintiff personally or had any prior dealings with him, or that they had any motive other than to carry out their lawful duties." (Doc. 18 at 11.) In response, Plaintiff argues that malice exists when a proceeding is instituted for an improper purpose, paragraph 41 of the complaint alleges that Officer Vasquez stated "I'm not saying it's illegal or not, I'm saying why would you want to do that?" in regard to Plaintiff's videotaping activity, and a reasonable juror could infer from this statement that the Glendale Defendants arrested him on charges they knew were baseless in an attempt to retaliate against him for exercising his First Amendment rights. (Doc. 22 at 16-17.) In reply, the Glendale Defendants argue that, "[a]t most," paragraph 41 "could be

1
2
3
4

construed as Officer Vasquez's attempt at understanding what Plaintiff was trying to accomplish by videotaping outside the base, and perhaps to understand his motive for refusing to leave when he was asked to do so. It certainly does not establish 'hatred' or 'ill will.'" (Doc. 25 at 7-8.)

5
6
7
8
9
10
11
12
13
14
15
16

The Glendale Defendants are not entitled to dismissal of Count V based on the absence of plausible allegations of malice. Although the Glendale Defendants have explained why Officer Vasquez's statement *could* be interpreted in a benign light, "[a]t the motion-to-dismiss stage, we take all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party, and then determine whether they plausibly give rise to an entitlement to relief." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (quotations omitted). When Officer Vasquez's statement is construed in the light most favorable to Plaintiff, it creates a plausible inference that it was an expression of antipathy toward Plaintiff based on his videotaping activity. *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

17

C.     **Qualified Immunity**

18
19
20
21
22
23
24
25
26
27
28

Finally, the Glendale Defendants argue they are entitled to qualified immunity because they "were entitled to believe that [the Air Force Defendants] were making truthful statements," it "was objectively reasonable . . . to assume that [the Air Force Defendants] knew where the property lines of the base were," and they "reasonably and appropriately based their probable-cause determination on these statements." (Doc. 18 at 11-13.) In response, Plaintiff argues that the Glendale Defendants aren't entitled to qualified immunity because (1) "an officer cannot claim mistake of law when he simply does not know what the law is, *i.e.,* where public property is in order to arrest someone for trespass," and (2) the complaint alleges that the Glendale Defendants conducted their own investigation after speaking with the Air Force Defendants that "significantly diminished any 'arguable probable cause' [they] may have had. Once they chose to investigate further,

they were the required to consider the information that negated the 'arguable probable cause.'" (Doc. 22 at 17-19.)

1.      Background

Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  A government official's conduct violates "clearly established" law when "'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (citation omitted).  Although there need not be a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  In other words, the case law must "have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017).  *See also Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("This Court has repeatedly told courts—and the Ninth Circuit in particular— not to define clearly established law at a high level of generality.") (quotation omitted).

Ninth Circuit law is not a model of clarity concerning which party has the burden of proof when the defense of qualified immunity has been raised.  On the one hand, many Ninth Circuit opinions hold that "[o]nce the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).  *See also Shafer*, 868 F.3d at 1118 ("Shafer argues that it is Deputy Padilla's burden to demonstrate that he did not violate Shafer's clearly established constitutional right.  Again, we disagree.").  On the other hand, other Ninth Circuit opinions hold that "[q]ualified immunity is an affirmative defense that the government has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017).  These opinions are difficult to reconcile.  *See generally Slater v. Deasey*, 943 F.3d 898, 909 (9th Cir. 2019) (Collins, J., dissenting from denial of rehearing en banc) ("The panel committed . . . error

- 13 -

1
2
3
4

in suggesting that Defendants bear the burden of proof on the disputed qualified-immunity issues presented in this appeal. . . .  [T]he applicable—and well-settled—rule is that '[t]he plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.'") (citation and emphases omitted).

5
6
7
8
9

Finally, although it "is often beneficial" to begin the qualified-immunity analysis by addressing whether a statutory or constitutional right has been violated, district courts are vested with discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

10

2.    Application

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Glendale Defendants are not entitled to dismissal based on qualified immunity at this early juncture of the case.  The complaint, when construed in the light most favorable to Plaintiff, alleges that Plaintiff committed no crime and remained on public property at all times (Doc. 1 ¶¶ 15-21, 24) and that, although the Glendale Defendants may have initially believed (based on the statement by the Air Force Defendants) that Plaintiff had engaged in trespassing (*id.* ¶ 30), they ultimately determined through their own investigation that they couldn't prove Plaintiff had trespassed (*id.* ¶¶ 36, 39, 41) yet arrested him despite that absence of proof.  In other words, the complaint can be construed as alleging that the Glendale Defendants proceeded with the arrest despite subjective awareness that probable cause had dissipated.  At the time of this incident (February 2017), the law was well established in the Ninth Circuit that such conduct was unconstitutional. *See, e.g., United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) (per curiam) ("If probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity.  A person may not be arrested . . . if previously established probable cause has dissipated.").

27
28

This conclusion, to be clear, is subject to reconsideration at later stages of the case. For example, it's possible that the evidence developed during discovery will show that the Glendale Defendants had a reasonably arguable basis for believing, even after their

investigation, that there was probable cause to arrest Plaintiff for trespassing (A.R.S. § 13-1502(A)(1)) and/or for refusing to provide his name after advisement by a peace officer (A.R.S. § 13-2412(A)).  In that scenario, the Glendale Defendants would be entitled to qualified immunity.  *Reed v. Lieurance*, 863 F.3d 1196, 1204-05 (9th Cir. 2017) ("[I]f an officer makes an arrest without probable cause, he or she may be entitled to qualified immunity as long as it is reasonably arguable that there was probable cause for the arrest."). Nevertheless, at the motion-to-dismiss stage, the complaint must be construed in the light most favorable to the plaintiff, and here the complaint can be construed as alleging that the Glendale Defendants arrested Plaintiff despite the absence of even a reasonable argument concerning the existence of probable cause.  *Cf. Keates*, 883 F.3d at 1234-35 (noting that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making" and that "[i]f the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims" despite an invocation of qualified immunity) (citation and internal quotation marks omitted).

III.     Leave To Amend

Although Plaintiff has not requested leave to amend, "the absence of a formal motion for leave to amend does not preclude the district court from granting it."  *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1013 (9th Cir. 2013).  *See also Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (quotation omitted).

Here, the Court declines to grant leave to amend as to Counts III, IV, and VI because amendment would be futile—those claims fail due to the operation of the statute of limitations, not due to a failure to allege facts with sufficient particularity. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (although leave to amend should be freely granted, "a district court need not grant leave to amend where the amendment . . . is futile").

1    Accordingly, **IT IS ORDERED** that:

2         (1)    The Glendale Defendants' motion to dismiss (Doc. 18) is **granted in part**

3  **and denied in part**.

4         (2)    Counts III, IV, and VI against the Glendale Defendants are **dismissed with**

5  **prejudice**.

6         Dated this 3rd day of June, 2020.

7

8

9                                                              _____
                                                                  Dominic W. Lanza
10                                                             United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28